# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| ELIZABETH WOOD, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Case No.: 18-cv-1056 |
| ) ) | **AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, ) ) | |
| v. ) ) | |
| ) ) | **Jury Trial Demanded** |
| VAN RU CREDIT CORPORATION, COLONY BRANDS INC., and SILVER STAR BRANDS INC., ) ) ) | |
| ) ) | |
| Defendants. ) | |

## INTRODUCTION

1.      This class action seeks redress for debt collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Elizabeth Wood is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6.      Defendant Van Ru Credit Corporation ("Van Ru") is a debt collection agency with its principal offices located at 1350 East Touhy Avenue, Suite 300E, Des Plaines, Illinois 60018.

7.      Van Ru is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      Van Ru is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.      Van Ru is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10.      Van Ru is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11.      Defendant Colony Brands, Inc. ("Colony") is a Wisconsin corporation with its primary place of business at 1112 7th Avenue, Monroe, Wisconsin 53566.

12.      Colony does business under fictitious, trade and/or brand names, including "Montgomery Ward," "Seventh Avenue," and "Through the Country Door," among others.

13.      Defendant Silver Star Brands, Inc. ("Silver Star") is a Wisconsin corporation with its primary place of business at 250 City Center, Oshkosh, Wisconsin 54906.

14.      Defendant Silver Star does business under fictitious, trade, or brand names, including "Easy Comforts," among others.

2

15.     Colony and Silver Star are retailers of home goods, operating primarily over the internet and through catalog sales.

16.     Colony and Silver Star allow consumers to purchase goods on credit. *See* https://www.colonybrands.com/customers/enriching-lives/credit-programs/; http://paylatershops.com/deferred/category/pay-later-shopping-online/.

17.     On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3).

18.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

19.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

20.     Colony and Silver Star are "debt collectors" under Wisconsin law, in that they collect consumer debts owed to themselves, both directly and indirectly through collection agencies.

21.     Colony, and Silver Star are "merchants" as defined in the WCA, as the alleged debts arise from use of Plaintiffs' consumer credit accounts. Wis. Stat. § 421.301(25) ("The term

3

[merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

22.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

23.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

24.     Colony and Silver Star use third-party debt collection agencies, including the third-party debt collection agency named as a co-defendant in this case, to collect consumer debts.  Colony and Silver Star, directly or indirectly, are debt collectors under this arrangement. Wis. Stat. § 427.103(3).

25.     Any company meeting the definition of a "debt collector" (here, Colony and Silver Star) is vicariously liable for the actions of a second company collecting debts on its behalf.  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

4

# FACTS

### *Facts Relating to Plaintiff's Seventh Avenue and Through the Country Door Accounts*

26. On or about November 27, 2017, Colony mailed an account statement to Wood regarding an alleged debt owed to Colony and regarding Wood's "Seventh Avenue" store-branded credit account. A copy of this account statement is attached to this complaint as Exhibit A.

27. Exhibit A contains the following:

| CUSTOMER STATEMENT | |
| --- | --- |
| Account Number | ████████ 3570 |
| New Balance | $74.59 |
| Payment Due Date | 07/25/2017 |
| Minimum Payment Due | $74.59 |

Exhibit A.

28. Exhibit A also contains the following:

Late Payment Warning: If we do not receive your minimum payment by the date listed above you may have to pay a $15.00 late fee.
Minimum Payment Warning: Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance.

| **SEVENTH AVENUE®** | If you make no additional charges using this card each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
| --- | --- | --- | --- |
| | Only the minimum payment | 4 months | $78.42 |
| **Payment Information** | | | |

If you would like information about credit counseling services, call 1-800-631-5613.

| New Balance $74.59 | Payment Due Date 07/25/2017 | Minimum Payment $74.59 |
| --- | --- | --- |

Exhibit A.

29. Exhibit A indicates that, as of November 27, 2017, the Wood's Seventh Avenue account ending in 3570 had a "New Balance" of $74.59, with a "Payment Due Date" of July 25, 2017 and a "Minimum Payment Due" of $74.59.

30. Exhibit A further indicates that, if Wood paid "only the minimum payment," it would take four months to pay off the balance, and Wood would end up paying an estimated total of $78.42.

5

31.     Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer.

32.     Exhibit A, mailed on or about November 27, 2017, states that the "Payment Due Date" is July 25, 2017.

33.     The unsophisticated consumer would be confused as to when her $74.59 payment was actually due.

34.     Exhibit A also states that the account balance is equal to the minimum payment but also states that, even if the consumer pays this amount, she will need to make additional payments for four months.

35.     Also on or about November 27, 2017, Colony mailed an account statement to Wood regarding an alleged debt, allegedly owed to Colony and regarding Wood's "Through the Country Door" credit account. A copy of this account statement is attached to this complaint as Exhibit B.

36.     Exhibit B contains the following:

| CUSTOMER STATEMENT | |
|---|---|
| Account Number | ████ 3530 |
| New Balance | $319.62 |
| Payment Due Date | 12/25/2017 |
| Minimum Payment Due | $200.00 |

Exhibit B.

37.     Exhibit B also contains the following:



| DATE | REFERENCE NO. | Transactions DESCRIPTION | PURCHASES/ CHARGES | PAYMENTS/ CREDITS |
|------|---------------|--------------------------|-------------------|-------------------|
| | | FEES | | |
| 11/07/2017 | LC0075054888 | LATE CHARGE | 15.00 | |
| | | INTEREST CHARGED | | |
| 11/27/2017 | FC20137400 | FINANCE CHARGE | 3.95 | |

URGENT MESSAGE FOR ELIZABETH A WOOD:

Your account is far past due!

Please pay at once to avoid an embarrassing
call from a collection agency.

PAYMENTS AND CREDITS RECEIVED AFTER 11/27/2017 WILL APPEAR ON YOUR NEXT STATEMENT.

| 2017 Totals Year-To-Date | |
|---|---|
| Total fees charged in 2017: | $90.00 |
| Total interest charged in 2017: | $42.32 |

Exhibit B.

38.    Exhibit B states that, as of November 27, 2017, Wood's Through the Country Door account ending in 3530 had a "New Balance" of $319.62, with a "Payment Due Date" of December 25, 2017, and a "Minimum Payment Due" of $200.00.

39.    Exhibit B also states that Colony assessed a "Late Charge" of $15.00 on November 7, 2017 and a "Finance Charge" of $3.95 on November 27, 2017.

40.    Exhibit B also states that, if Wood paid the account "at once," she could "avoid an embarrassing call from a collection agency."

41.    On or about December 5, 2017, Van Ru mailed a debt collection letter to Wood regarding an alleged debt, allegedly owed to "Creditor: Country Door."  A copy of this letter is attached to this complaint as Exhibit C.

42.    The alleged debts referenced in Exhibits A, B, & C were allegedly incurred for personal, family, or household purposes with an agreement to defer payment.

43.    Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Wood inserted by computer.

44.    Upon information and belief, Exhibit C is a form debt collection letter used by Defendant Van Ru to attempt to collect alleged debts.

45.     Exhibit C was the first letter that Van Ru sent to Wood with respect to Wood's alleged "Country Door" debt.

46.     Exhibit C contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector send along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit C.

47.     Exhibit C also contains the following:

> December 05, 2017                                 VR File #: 51504642
>                                                    Balance: $394.21

Exhibit C.

48.     Exhibit C contains the following account breakdown:

> **Creditor:** Country Door
>
> Account #                           Balance
>             3530                     319.62
>             3570                      74.59

Exhibit C.

49.     Exhibit C attempts to collect debts associated with Wood's Seventh Avenue and Country Door accounts.

50.     Exhibit C states that the "Creditor" is "Country Door."

51.     Exhibit C does not identify Colony.

52.     Exhibit C does not identify Seventh Avenue.

53.     The unsophisticated consumer would be confused and misled as to the name of the creditor to whom the debt associated with an account ending in 3570 is owed.

8

54.     Moreover, Exhibit C states that the balance of the account ending in 3530 is $319.62, equal to the "New Balance" stated in Exhibit B..

55.     The debt associated with the account number ending in 3530 that Defendant Van Ru attempted to collect in Exhibit C, sent on or about December 5, 2017, is $319.62 but Exhibit B, mailed on or about November 27, 2017, informed Wood that the "Minimum Payment Due" was $200.00, with a "Payment Due Date" of December 25, 2017.

56.     Looking at Exhibits A, B, & C together, the unsophisticated consumer would be confused and misled as to the accounts Van Ru was collecting.

57.     Looking at Exhibits A, B, & C together, the unsophisticated consumer would be confused and misled as to whether Van Ru was collecting the minimum payment due on the Country Door account, $200.00, or the entire balance of the account, $319.62.

58.     Exhibit C misrepresents the actual amount of the debt that was due on April 18, 2017. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time.").

59.     If the creditor and debt collector both reported the account to credit reporting agencies, because the amount of debt and account number were different, anyone reviewing the credit report would assume there were two separate debts.

60.     Colony informed Wood that her Through the Country Door would not be sent to a third-party debt collector for collection of the entire balance unless she failed to make the minimum payment of $200.00 by December 5, 2017 but Van Ru contacted Wood about the alleged debt, attempting to collect the entire balance, on December 5, 2017.

9

### *Facts Relating to Wood's Easy Comforts Account*

61.    On or about December 4, 2017, Silver Star mailed an account statement to Wood regarding an alleged debt, allegedly owed to Silver Star and regarding Wood's alleged "Easy Comforts"-brand credit account. A copy of this account statement is attached to this complaint as <u>Exhibit D</u>.

62.    <u>Exhibit D</u> contains the following:

| CUSTOMER STATEMENT | |
|---|---|
| Account Number | ▮▮▮▮0729-B7 |
| New Balance | $105.84 |
| Payment Due Date | 12/31/2017 |
| Minimum Payment Due | $79.92 |

<u>Exhibit D</u>.

63.    <u>Exhibit D</u> also contains the following:

| DATE | REFERENCE NO | Transactions DESCRIPTION | PURCHASES/ CHARGES | PAYMENTS/ CREDITS |
|---|---|---|---|---|
| | | FEES | | |
| 11/13/2017 | B7LC00279577 | LATE CHARGE | 10.00 | |
| | | INTEREST CHARGED | | |
| 12/04/2017 | B700965884 | FINANCE CHARGE | .79 | |

PAYMENTS AND CREDITS RECEIVED AFTER 12/04/2017 WILL APPEAR ON YOUR NEXT STATEMENT.

| 2017 Totals Year-To-Date | |
|---|---|
| Total fees charged in 2017: | $60.00 |
| Total interest charged in 2017: | $10.06 |

64.    <u>Exhibit D</u> indicates that, as of December 4, 2017, Wood's alleged Easy Comforts credit account ending in 0729-B7 had a "New Balance" of $105.84, a "Payment Due Date" of December 31, 2017, and a "Minimum Payment Due" of $79.92.

65.     Exhibit D also indicates that Silver Star assessed a "Late Charge" in the amount of $10.00 on November 13, 2017 and a "Finance Charge" of $0.79 on December 4, 2017.

66.     On or about December 12, 2017, Van Ru mailed a debt collection letter to Wood regarding the alleged debt owed to "Easy Comforts."  A copy of this letter is attached to this complaint as Exhibit E.

67.     The alleged debt referenced in Exhibits D & E was allegedly incurred for personal, family, or household purposes with an agreement to defer payment.

68.     Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Wood inserted by computer.

69.     Upon information and belief, Exhibit E is a form debt collection letter used by Defendant Van Ru to attempt to collect alleged debts.

70.     Exhibit E was the first letter that Van Ru sent to Wood with respect to Plaintiff Wood's alleged "Easy Comforts" debt.

71.     Exhibit E contains the following:



Exhibit E.

72.     Exhibit E also contains the following:

Exhibit E.

73.     Exhibit E attempts to collect an account balance of $105.84, equal to the "New Balance" listed in Exhibit D.

11

74.     The debt that Defendant Van Ru attempted to collect in <u>Exhibit E</u>, sent on or about December 12, 2017, is $105.84 but <u>Exhibit D</u>, mailed on or about December 4, 2017, informed Plaintiff that the "Minimum Payment Due" was $79.92, with a "Payment Due Date" of December 31, 2017.

75.     Looking at <u>Exhibits D and E</u> together, the unsophisticated consumer would be confused as to the amount Van Ru was collecting: the minimum payment due, $79.92, or the entire balance of the account, $105.84.

76.     <u>Exhibit E</u> misrepresents the actual amount of the debt that was due on July 6, 2016. *See Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

77.     If the creditor and debt collector both reported the account to credit reporting agencies, because the amount of debt, and account numbers were different, anyone reviewing the credit report would assume there were two separate debts.

78.     Wood was confused and misled as to the identity of the creditor and the amount of the debt Van Ru was attempting to collect.

79.     The unsophisticated consumer would be confused and misled as to the amount of the debt Van Ru was attempting to collect.

80.     Wood had to spend time and money investigating <u>Exhibits A-E</u>, and the consequences of any potential responses to <u>Exhibits A-E</u>.

81.     Wood incurred time and expense procuring her credit report to determine the amount of the debts Van Ru was attempting to collect and whether Colony, Silver Star, Seventh Avenue, Through the Country Door, and/or Easy Comforts was reporting inaccurate credit information.

82.    Wood had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to obtain counsel on the consequences of Exhibits A-E.

### The FDCPA

83.    The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

84.    The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

85.    Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

13

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

86. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

87. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773,

14

777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

88.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

15

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

89.     15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

90.     15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

91.     15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

92.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

93.     15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

94.     15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

95.     15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt

16

(2) the name of the creditor to whom the debt is owed;

96.     The Seventh Circuit has held that a debt collector must state the required disclosures in a non-confusing manner.  *E.g., Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (debt collector must state the amount of the debt in a non-confusing manner).

97.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692g(a)(2) are the same. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers.  If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

98.     The Seventh Circuit has also held that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

99.     Under *Barnes*, Van Ru cannot attempt to collect portions of the balance that are "owed" to the creditor but are not yet "due."  *Barnes*, 493 F.3d at 840; *see also Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6; 15 U.S.C. § 1692e(2)(A) (prohibiting misrepresentations about the legal status of a debt).

### *The WCA*

100.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

101.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country,"

17

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

102.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

103.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

104.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

105.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

106.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

18

107.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

108.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

109.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

110.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

111.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

112.    The Wisconsin Department of Financial Institutions, the administrative agency tasked with the regulation of "Collection Agencies" licensed pursuant to Wis. Stat. § 218.04, has found that Collection Agencies engage in conduct that can reasonably be expected to threaten or harass customers when they engage in "conduct which violates the Federal Fair Debt Collection Practices Act." *See* Wis. Admin. Code § DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited").

## COUNT I – FDCPA

113.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

114.    Count I is brought against Defendant Van Ru.

115.    Van Ru's letters are misleading and confusing to the unsophisticated consumer in that Van Ru's letters fail to state the name of the creditor to whom the debt is owed in a non-confusing manner.

116.    Exhibit C states that the name of the creditor for Plaintiff's Seventh Avenue debt is "Country Door." In fact, neither "Country Door" nor "Through the Country Door" is the creditor or the merchant for Plaintiff's Seventh Avenue debt.

117.    Defendant violated 15 U.S.C. § 1692g(a)(2).

## COUNT II – FDCPA

118.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

119.    Count II is brought against Defendant Van Ru.

120.    Van Ru's letters are misleading and confusing to the unsophisticated consumer in that Van Ru's letters contradict the creditors' account statements.

121.    Van Ru's letters were sent before the "Payment Due Date" and the balance Van Ru attempted to collect was greater than the "Minimum Payment Due" that was stated in the account statement.

122.    Van Ru's letters overstate the amount of the debt.

123.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT III – WCA

124.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

125.    Count III is brought against all Defendants.

20

126. Colony and Silver Star informed Wood that it would not send her accounts to third-party debt collectors as long as Plaintiffs paid the "Minimum Payment Due" by the "Payment Due Date" but instead sent the accounts to third-party debt collectors within days after sending their statements.

127. Although Colony and Silver Star informed Wood that she need only pay the "Minimum Payment Due" by the "Payment Due Date," Colony and Silver Star engaged Van Ru, a third-party debt collector, who attempted to collect the entire balance of Plaintiff's accounts before the "Payment Due Date."

128. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

129. Plaintiffs bring this action on behalf of two Classes.

130. Class I ("Colony Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent initial collection letters in the form represented by Exhibit C, (c) attempting to collect a debt owed to Colony, (d) between July 10, 2017 and July 10, 2018, inclusive, (g) that was not returned by the postal service.

131. Class II ("Silver Star Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent initial collection letters in the form represented by Exhibit E, (c) attempting to collect a debt owed to Silver Star, (d) between July 10, 2017 and July 10, 2018, inclusive, (g) that was not returned by the postal service.

132. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

133.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and WCA.

134.    Plaintiffs' claims are typical of the claims of the members of each class.  All are based on the same factual and legal theories.

135.    Plaintiffs will fairly and adequately represent the interests of the members of each class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

136.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

137.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)    injunctive relief;

(d)    attorneys' fees, litigation expenses and costs of suit; and

(e)    such other or further relief as the Court deems proper.

Dated:  July 10, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

23